W. Scott Holleman (#310266)
Melissa A. Fortunato (#319767)
**BRAGAR EAGEL & SQUIRE, P.C.**
101 California Street, Suite 2710
San Francisco, California 94111
Telephone: (415) 365-7149
Fax: (212) 214-0506
Email: holleman@bespc.com
       fortunato@bespc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMAL HAIDERI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JUMEI INTERNATIONAL HOLDING LIMITED, LEO OU CHEN, ZHENQUAN REN, SEAN SHAO, MANG SU, and ADAM J. ZHAO,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Emal Haideri ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon information and belief (except for facts concerning Plaintiff, which are alleged upon knowledge), and upon a continuing investigation conducted by and through Plaintiff's counsel into the facts and circumstances alleged herein, which included, without limitation, review and analyses of: (i) the public filings of Jumei International Holdings Limited, Ltd. ("Jumei" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); and (ii) press releases, public statements, analyst reports, news articles, and other publications disseminated by or concerning Jumei, Jumei's founder and longtime controller Leo Ou Chen ("Chen"), Chen affiliates Super ROI Global Holding Limited ("Super ROI") and Jumei Investment Holding Limited ("Purchaser"), and the recently completed acquisition of Jumei (the "Buyout").

## NATURE OF THE ACTION

1. This is a class action brought on behalf of former Jumei stockholders against Jumei and the members of its Board of Directors (the "Board" or the "Individual Defendants") for violating

Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with Chen's recent Buyout of Jumei through his affiliates Super ROI and Purchaser.

2. On February 25, 2020, Jumei and Super ROI issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated February 25, 2020 (the "Merger Agreement") to sell Jumei to Super ROI through a tender offer and subsequent short-form merger. Under the Merger Agreement, Chen, who already controlled 44.6% of the Company's shares and 88.9% of the voting power, would acquire the rest of Jumei's shares for $2.00 per share in cash for each Class A Ordinary Share, which equated to $20.00 per each American Depository Share ("ADS"). The Buyout valued Jumei's equity value at approximately $229 million.

3. On February 26, 2020, Super ROI and Purchaser commenced the tender offer, which expired on April 8, 2020. Chen, Super ROI, and Purchaser completed the Buyout on April 14, 2020, and Jumei is no longer an independent company.

4. The Buyout is the result of an unfair process not stemming from the Board's concern for the best interest of the stockholders, but rather from the Board's desire to avoid competitive bidding in order to purchase the Company at a discounted price, providing the Company's stockholders with inadequate consideration. As described in more detail below, the Buyout price is inadequate and undervalues the Company.

5. Defendants have also agreed to unreasonable deal-protection devices that unfairly favor Super ROI and discourage potential bidders from submitting a superior offer for the Company. These preclusive devices include: (i) a non-solicitation provision that restricts the Board or Special Committee from soliciting other potentially superior offers for the Company; (ii) an information rights provision, which provides Super ROI with unfettered access to information about other potential proposals, gives Super ROI five business days to match any competing offer, and provides Super ROI with the perpetual right to attempt to match any superior bid; and (iii) a termination fee of $2.5 million, which deters other potential suitors from making a superior proposal. In fact, the termination fee amounts to an unreasonably high 2.0% of the equity value of the Buyout.

6. On February 26, 2020, Jumei filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement,

which recommends that Jumei stockholders tender their shares pursuant to the terms of the Merger Agreement, omits or misrepresents material information concerning, among other things: (i) Jumei's financial projections, relied upon by Jumei's financial advisor, Houlihan Lokey Limited ("Houlihan"); (ii) the data and inputs underlying the financial valuation exercises that purportedly support the so-called "fairness opinion" provided by Houlihan; and (iii) the background of the Buyout. The failure to adequately disclose such material information constitutes a violation of Sections 14(e) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully informed decision regarding tendering their shares in connection with the Buyout.

7. In short, the Buyout is designed to unlawfully divest Jumei stockholders of the Company's valuable assets without fully disclosing all material information regarding the Buyout to Company stockholders. Plaintiff seeks to hold Defendants accountable.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the claims asserted herein for the violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

9. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Moreover, in connection with the acts, conduct, and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district.

## PARTIES

11. Plaintiff was at all relevant times a Jumei stockholder.

12. Jumei, an exempted company incorporated in the Cayman Islands, retails beauty products, baby, children, and maternity products, light luxury products, and health supplements online.

The Company's corporate headquarters is located at 20th Floor, Tower B, Zhonghui Plaza, 11 Dongzhimen South Road, Dongcheng District, Beijing 100007, People's Republic of China. Its common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "JMEI."

13. Defendant Chen is the founder and has served as the Chairman of the Board and Chief Executive Officer since the Company's inception.

14. Defendant Zhenquan Ren ("Ren") has served as an independent director of the Company since 2015.

15. Defendant Sean Shao ("Shao") has served as independent director and chairman of the audit committee of Jumei since 2014.

16. Defendant Mang Su ("Su") has served as an independent director of the Company since 2015.

17. Defendant Adam J. Zhao ("Zhao") has served as an independent director of the Company since 2016.

18. Defendants Chen, Ren, Shao, Zhao, and Su are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Super ROI Global is a privately owned company organized and existing under the laws of the British Virgin Islands beneficially owned by Chen through a trust.

20. Purchaser is a wholly owned subsidiary of Super ROI Global incorporated with limited liability under the laws of the Cayman Islands and was formed for the sole purpose of engaging in the Buyout.

**CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all persons that held Jumei common stock at any point in time from February 25, 2020, through April 14, 2020 (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns, and any entity which defendants have or had a controlling interest.

22. Plaintiff's claims are properly maintainable as a class action under Rule 23.

23. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of March 3, 2020, there were approximately 63,255,412 outstanding Company Class A Ordinary Shares and ADSs issued and outstanding plus 393,218 Class A Ordinary Shares issuable under all outstanding and unexercised options. The ratio of ADS to Ordinary Shares is 10:1 pursuant to the ratio change announced on an exhibit to the Form 6-K filed with the SEC on December 31, 2019. All members of the Class may be identified from records maintained by Jumei or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice like those customarily used in securities class actions.

24. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including:

    a) whether Defendants have violated Section 14(e) of the Exchange Act; and

    b) whether the Individual Defendants have violated Section 20(a) of the Exchange Act.

25. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

28. Preliminary and final injunctive relief on behalf of the Class as a whole is appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

**SUBSTANTIVE ALLEGATIONS**

**Jumei's Background and Strong Financial Outlook**

29. Jumei was incorporated in 2010 in the Cayman Islands and was publicly listed on the NYSE in May 2014. Jumei is an offshore holding company engaged in retailing beauty products online. The Company has adopted multiple sales formats to encourage product purchases on its platform. Their sales formats consist of curated sales, online shopping malls, and flash sales. The Company mostly engages in selling products from South Korea, Japan, Taiwan, United States, and European countries.

30. The Company boasts about its "large base of highly engaged and loyal customers." Orders placed by repeat customers accounted for approximately 91.2%, 90.8%, and 87.9% of total orders in 2016, 2017, and 2018, respectively. Jumei claimed 10.7 million customers and 1,341 suppliers and third-party merchants in 2018. Jumei invested a substantial amount of resources into building a better mobile platform than its competitors which it credits with significant mobile platform sales growth since its launch in May 2012. The mobile platform generated 98.4% of the Company's gross merchandise volume in 2018.

31. Jumei has also invested in adjacent fashion and lifestyle businesses such as Jiedian, a mobile device power bank operating company, and TV drama series production, to expand its service offerings. These investments were entered into to further expand and strengthen Jumei's ecosystem as it seeks to benefit from China's transition into the new retail era.

32. On April 30, 2019, Jumei filed a Form 20-F with the SEC wherein it reported positive financial results throughout the first half of 2018. The positive financial results included increases in cash and cash equivalents of RMB 282.8 million and short-term investments by RMB 121.7 million as of June 30, 2018 from December 31, 2017.

33. In April 2018, the Board approved a share repurchase program whereby the Company was authorized to repurchase ordinary shares with an aggregate value up to $100 million for the period through April 2019. For the period beginning in May 2018 and ending December 31, 2018, the Company repurchased a total of 26,031,329 ordinary shares at an average price of $2.30 per share.

34. On January 2, 2020, Jumei filed a Form 6-K with the SEC that attached a press release as an exhibit stating that Jumei will delay the release of its financial results for the six-month period

ending June 30, 2019.  No financial reports have been filed with the SEC since the 2018 annual report filed on April 30, 2019 on Form 20-F.

35. Recently Jumei has undertaken efforts to improve its financial results.  As stated on its website and in numerous SEC filings, Jumei has "invested in adjacent fashion and lifestyle businesses such as Jiedian, a mobile device power bank operating company, and TV drama series production, to expand its service offerings.  These investments will further expand and strengthen Jumei's ecosystem as it seeks to benefit from China's transition into the new retail era."

**The Background of the Buyout**

36. Between January 2, 2020, and January 10, 2020, a total of eight days, defendant Chen and representatives of the Company's corporate counsel, Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden"), participated in a number of discussion regarding a proposal to acquire all outstanding Class A Ordinary Shares that were not already owned by Chen and his affiliates.  The following day, January 11, 2020, Chen delivered a preliminary non-binding proposal (the "Proposal") announcing his intent to acquire all shares not already owned by Chen's group.  On January 12, 2020, Jumei issued press release announcing its receipt of the Proposal and the creation of a Special Committee composed of independent directors Shao and Zhao.

37. On January 13, 2020, the next day, Jumei filed a Form 6-K with the SEC attaching the previous day's press release as an exhibit.  The same day, Chen and Super ROI jointly filed a Schedule 13D/A reflecting its intent with the Buyout.

38. Between January 13, 2020, and January 23, 2020, Chen and representatives of Skadden participated in several discussions regarding the Buyout including the feasibility of a two-step merger. From January 13, 2020, through February 10, 2020, Chen reviewed and discussed with certain financial institutions debt financing of the Buyout, including with Tiga Investments Pte. Ltd ("Tiga").

39. On January 14, 2020, Jumei issued a press release announcing that the Special Committee engaged Houlihan as its financial advisor.  The day before, on January 13, 2020, Jumei provided the press release to the SEC as an exhibit to a current report on Form 6-K.

40. Between January 17, 2020, and January 23, 2020, a period of six days, representatives of Skadden and the Special Committee's legal counsel, Hogan Lovells, engaged in several discussions

regarding the Buyout. The following day, on January 24, 2020, Skadden sent an initial draft of the Merger Agreement to Hogan Lovells.

41. Between February 3, 2020, and February 24, 2020, Skadden and Hogan Lovells participated in numerous discussions regarding the Buyout. From February 7, 2020, to February 10, 2020, Skadden, Chen's group, and Tiga discussed the terms and conditions under a debt commitment letter (the "Debt Commitment Letter").

42. Between February 10, 2020, and February 22, 2020, Chen's group presented its plan of financing to the Special Committee and held discussions with Hogan Lovells and Houlihan regarding that plan. On February 10, 2020, Chen's group received the executed Debt Commitment Letter from Tiga.

43. Between February 11, 2020, and February 25, 2020, Hogan Lovells and Skadden exchanged comments on and drafts of the Merger Agreement.

**The Buyout Is Inadequate**

44. On February 25, 2020, Super ROI and Jumei executed the Merger Agreement. On the same date, Jumei and Super ROI issued a joint press release announcing that they had entered into the Merger Agreement.

45. On February 26, 2020, Super ROI and Jumei commenced the Offer.

46. The purpose of the Offer is stated as a means for Super ROI to increase its direct and indirect ownership of the outstanding shares from its then existing level of approximately 44.6% to 100%. If enough shares are tendered pursuant to the Offer to provide Super ROI with 90% of the total voting power, then the parties will perform a "short-form" merger which does not require the vote of the stockholders of the parties to the Buyout.

47. The $2.00 per share Buyout price that Jumei's public stockholders will receive is insufficient, as it fails to adequately account for the Company's strong financial prospects and the tremendous benefits Super ROI and the Individual Defendants will reap from the Merger.

48. Jumei stock traded above the Buyout price as recently as January 6, 2020. In fact, the Company's stock price was consistently higher than the Buyout price for the vast majority of 2019.

**Insider Interests in the Buyout**

49. Jumei insiders are the primary beneficiaries of the Buyout, not the Company's public stockholders. Defendant Chen will be the sole beneficial owner of Jumei after the close of the Transaction. Not only will Chen become the sole owner of the Company, but he and fellow executive Huipu Liu, as well as all other officers and directors of the Company, including the members of the Special Committee, will maintain their current positions with Jumei.

50. Instead of attempting to negotiate an agreement reflecting the best consideration reasonably available for former Jumei stockholders, the Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Buyout to meet their own needs and objectives. The Board's efforts to advance its members' and officers' personal interests at the expense of the Company's public stockholders have resulted in the inadequate Buyout being presented to the stockholders at an untenable and inadequate price. Thus, while Jumei's former public stockholders lost control of the Company for an unfair price, certain Company insiders will substantially benefit from the Buyout.

**The Recommendation Statement Was Materially False, Misleading, and Inadequate**

51. On February 26, 2020, Defendants caused the materially incomplete and misleading Recommendation Statement to be filed with the SEC. While the Recommendation Statement provides a summary of the review process the Special Committee undertook prior to voting to enter into the Merger Agreement with Super ROI and the financial analyses Houlihan performed in support of its fairness opinion, it omits certain pieces of critical information which render portions of the Recommendation Statement materially incomplete and misleading.

52. Specifically, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Jumei's financial projections, relied upon by Jumei's financial advisor, Houlihan; (ii) the data and inputs underlying the financial valuation exercises that purportedly support the so-called "fairness opinion" provided by Houlihan; and (iii) the background of the Buyout. The Recommendation Statement does not, for example, disclose any basis for the Board's decision in mid-February to demand a price increase from Chen despite backing off suck demands less than two weeks later. The

Recommendation Statement also is materially inadequate and misleading in that it represents the financial projections contained in the Recommendation Statement as being created by management but also states, "No members of the Buyer Group were provided with, and none of such persons were entitled rely to or relied on, any of these financial projections." This is concerning and appears disingenuous given that the Buyout was led by Chen, Jumei's longtime chairman and CEO.

53. Accordingly, Jumei stockholders were asked to tender their shares in support of the Buyout without all material information at their disposal and, thus, have suffered substantial damage.

## CLAIMS FOR RELIEF

### COUNT I

### Claim for Violations of Section 14(e) of the Exchange Act
### Against All Defendants

54. Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

55. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 15 U.S.C. § 78n(e).

56. As discussed above, Jumei issued the false and misleading Recommendation Statement. Defendants knew that Plaintiff and all other stockholders would rely upon their statements in the Recommendation Statement in determining whether to tender their shares pursuant to the tender offer commenced in conjunction with the Buyout.

57. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, Plaintiff has sustained and will continue to sustain damages by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

### COUNT II

### Claims for Violations of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Jumei within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Jumei and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Buyout. They were, thus, directly involved in the making of this document.

62. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Buyout. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

Plaintiff demands judgment and preliminary relief, including injunctive relief, in his favor on behalf of Jumei's former public stockholders, and against Defendants, as follows:

    A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class Counsel;

      B.      Rescinding the Buyout and setting it aside or awarding rescissory or other damages to Plaintiff and the Class;

      C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' fees and experts' fees; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 21, 2020                          Respectfully submitted,

                                                     **BRAGAR EAGEL & SQUIRE, P.C.**

                                                     /s/ *W. Scott Holleman*
                                                     W. Scott Holleman (SBN 310266)
                                                   Melissa A. Fortunato (SBN 319767)
                                                   101 California Street, Suite 2710
                                                 San Francisco, California 94111
                                                 Telephone: (415) 365-7149
                                                 Email: holleman@bespc.com
                                                           fortunato@bespc.com

                                                   *Attorneys for Plaintiff*