UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMAL HAIDERI,

              Plaintiff,

      v.

JUMEI INTERNATIONAL HOLDING
LIMITED, et al.,

           Defendants.

Case No.  20-cv-02751-EMC

**ORDER GRANTING ALTIMEO'S
MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF AND SELECTION
OF LEAD COUNSEL, AND DENYING
HUANG GROUP'S MOTION FOR
APPOINTMENT AND SELECTION**

Docket Nos. 12, 17

     This federal securities class action was filed on April 21, 2010.  Defendants are Jumei International Holding Limited and its Board of Directors, including but not limited to Leo Ou Chen (Jumei's founder and CEO).  The complaint charges Defendants with violating §§ 14(e) and 20(a) of the Securities Exchange Act of 1934 in connection with a recent buyout of Jumei by companies affiliated with Leo Ou Chen.

     Currently pending before the Court are competing motions for appointment as lead plaintiff and approval of selection of lead counsel.  The first motion (Docket No. 12) is brought by a group of four individuals (hereinafter the "Huang Group").  Counsel for the Huang Group is Bragar Eagel & Squire, P.C. ("BES").  The second motion (Docket No. 17) is brought by Altimeo, an institutional investor.  Altimeo is represented by Pomerantz LLP.

## I.      FACTUAL & PROCEDURAL BACKGROUND

     The complaint contains the following allegations.

     "Jumei is [] . . . holding company engaged in retailing beauty products online. . . . The Company mostly engages in selling products from South Korea, Japan, Taiwan, United States, and European countries."  Compl. ¶ 29.

1   In early January 2020, Leo Ou Chen (Jumei's founder and CEO) began discussions with

2   Jumei's corporate counsel "regarding a proposal to acquire all outstanding Class A Ordinary

3   Shares that were not already owned by Chen and his affiliates." Compl. ¶ 36.

4   "On February 25, 2020, Jumei and Super ROI [a company affiliated with Leo Ou Chen]

5   issued a joint press release announcing that they had entered into an Agreement and Plan of

6   Merger . . . to sell Jumei to Super ROI through a tender offer and subsequent short-form merger."

7   Compl. ¶ 2.  The merger agreement provided that

8   Chen, who already controlled 44.6% of the Company's shares and
    88.9% of the voting power, would acquire the rest of Jumei's shares
9   for $2.00 per share in cash for each Class A Ordinary Share, which
    equated to $20.00 per each American Depositary Share ("ADS").
10  The Buyout valued Jumei's equity value at approximately $229
    million.

11

12  Compl. ¶ 2.

13  According to the complaint,

14  the Buyout is the result of an unfair process not stemming from the
    Board's concern for the best interest of the stockholders, but rather
15  from the Board's desire to avoid competitive bidding in order to
    purchase the Company at a discounted price, providing the
16  Company's stockholders with inadequate consideration. . . . [T]he
    Buyout price is inadequate and undervalues the Company.

17

18  Compl. ¶ 4.

19  The complaint also contains allegations that Defendants

20  agreed to unreasonable deal-protection devices that unfairly favor
    Super ROI and discourage potential bidders from submitting a
21  superior offer for the Company.  These preclusive devices include:
    (i) a non-solicitation provision that restricts the Board or Special
22  Committee from soliciting other potentially superior offers for the
    Company; (ii) an information rights provision, which provides Super
23  ROI with unfettered access to information about other potential
    proposals, gives Super ROI five business days to match any
24  competing offer, and provides Super ROI with the perpetual right to
    attempt to match any superior bid; and (iii) a termination fee of $2.5
25  million, which deters other potential suitors from making a superior
    proposal. In fact, the termination fee amounts to an unreasonably
26  high 2.0% of the equity value of the Buyout.

27  Compl. ¶ 5.

28  Finally, the complaint includes allegations that Jumei's Schedule 14D-9 – which

United States District Court
Northern District of California

2

1     recommended to stockholders that they tender their shares pursuant to the terms of the merger

2     agreement – omitted or misrepresented material information.  *See* Compl. ¶ 6.

3              As indicated above, there are two causes of action asserted in the complaint:

4         (1) A violation of the Securities Exchange Act § 14(e).  *See* 15 U.S.C. § 78n(e) (providing

5              that "[i]t shall be unlawful for any person to make any untrue statement of a material

6              fact or omit to state any material fact necessary in order to make the statements made,

7              in the light of the circumstances under which they are made, not misleading or to

8              engage in any fraudulent, deceptive, or manipulative acts or practices, in connection

9              with any tender offer or request or invitation for tenders, or any solicitation of security

10             holders in opposition to or in favor of any such offer, request, or invitation").

11        (2) A violation of the Securities Exchange Act § 20(a) (against the individual defendants

12             only).  *See id.* § 78t(a) (providing that "[e]very person who, directly or indirectly,

13             controls any person liable under any provision of this title [15 U.S.C. §§ 78a *et seq.*] or

14             of any rule or regulation thereunder shall also be liable jointly and severally with and to

15             the same extent as such controlled person to any person to whom such controlled

16             person is liable . . . , unless the controlling person acted in good faith and did not

17             directly or indirectly induce the act or acts constituting the violation or cause of

18             action").

19             The class is defined as "all persons that held Jumei common stock at any point in time

20    from February 25, 2020, through April 14, 2020."  Compl. ¶ 21.

21                                    **II.     <u>DISCUSSION</u>**

22             As stated above, the motions pending before the Court are competing motions for

23    appointment as lead plaintiff and approval of selection of lead counsel.  These motions are

24    governed by the PSLRA.  *See generally* 15 U.S.C. § 78u-4(a)(3) (titled "Appointment of lead

25    plaintiff").

26             Under the PSLRA,

27             [n]ot later than 20 days after the date on which the complaint is
               filed, the plaintiff or plaintiffs shall cause to be published, in a
28             widely circulated national business-oriented publication or wire

United States District Court
Northern District of California

service, a notice advising members of the purported plaintiff class –

> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

*Id.* § 78u-4(a)(3)(A)(i).

In the instant case, there appears to be no issues related to notice. *See, e.g.*, Holleman Decl., Ex. 2 (indicating that notice was published over *PR Newswire* on April 21, 2020; advising 60 days to file motion to appoint); Pafiti Decl., Ex. C (same). That being the case, the Court turns to the standards for appointment of lead plaintiff, as provided for by the PSLRA. The PSLRA instructs as follows.

> (B)    Appointment of lead plaintiff.
>
> (i)    In general. Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.
>
> . . . .
>
> (iii)  Rebuttable presumption.
>
> (I)    In general. Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title [15 U.S.C. §§ 78a et seq.] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

4

|     |     |     |
| --- | --- | --- |
|     | (cc) | otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. |
| (II) |     | Rebuttal evidence.  The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff— |
|     | (aa) | will not fairly and adequately protect the interests of the class; or |
|     | (bb) | is subject to unique defenses that render such plaintiff incapable of adequately representing the class. |

*Id.* § 78u-4(a)(3)(B).

In the instant case, Altimeo initially claimed in its papers that its financial interest exceeds that of the Huang Group.  However, at the hearing, Altimeo conceded that, in fact, the Huang Group has the larger financial interest.[1]

Because the Huang Group has the larger financial interest, it is entitled to consideration  as to whether it is an adequate lead plaintiff (*i.e.*, whether it can fairly and adequately protect the interests of the putative class).  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) (asking whether the applicant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure").  In evaluating adequacy, the Court must first take into account that the Huang Group is – as its name reflects – a group, and not a single person or entity.  The PSLRA expressly allows a group to be appointed lead plaintiff.  But courts have often looked with skepticism at "artificial groups," *i.e.*, groups made up of persons or entities that did not have a pre-litigation relationship. *See Isaacs v. Musk*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *13 (N.D. Cal. Nov. 27, 2018); *see also In re E.spire Communs. Sec. Litig.*, 231 F.R.D. 207, 213 (D. Md. 2000) (stating that, although a group can be appointed lead plaintiff, it "should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys").

---

[1] In fact, there are two members of the Huang Group (Huang Xianrong and Guoshen Su) who *each* have a larger financial interest compared to Altimeo.

United States District Court
Northern District of California

1   Underlying this skepticism is that such groups are often formed by lawyers for purposes of

2   obtaining appointment as lead counsel.  Appointing a lawyer-engineered group would "undercut[]

3   the primary purpose of the PSLRA: to eliminate *lawyer-driven* litigation."  *Eichenholtz v. Verifone*

4   *Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*25 (N.D. Cal. Aug. 22,

5   2008) (emphasis added); *see also Brady v. Top Shops Inc.*, 324 F. Supp. 3d 335, 345 (E.D.N.Y.

6   2018) (noting that "'[o]ne of the principal legislative purposes of the PSLRA was to prevent

7   lawyer-driven litigation'").  Even the Third Circuit – which has "disagreed with those courts

8   [holding] that the [PSLRA] invariably precludes a group of 'unrelated individuals' from serving as

9   a lead plaintiff" – has acknowledged that "the extent of the prior relationships and/or connection

10   between the members of a movant group" are legitimate factors to consider in determining

11   whether an artificial group can fairly and adequately protect the interests of the class.  *In re*

12   *Cendant*, 264 F.3d 201, 266 (3d Cir. 2001).

13   If, for example, a court were to determine that the movant "group"
14   with the largest losses had been created by the efforts of lawyers
      hoping to ensure their eventual appointment as lead counsel, it could
15   well conclude, based on this history, that the members of that
      "group" *could not be counted on to monitor counsel in a sufficient*
16   *manner.*

17   *Id.* at 267 (emphasis added).

18   Moreover, allowing for appointment of lawyer-engineered groups may lead to "unintended

19   results" such as "generat[ing] a flurry of otherwise pointless activity that adds nothing to the

20   prompt and fair resolution of disputes" and "creat[ing] powerful incentives for lawyers competing

21   to represent the class to solicit clients."  *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005

22   U.S. Dist. LEXIS 6243, at \*8 (N.D. Ill. Mar. 15, 2005) (internal quotation marks omitted).

23   In the case at bar, Altimeo contends that the Huang Group is an artificial group and

24   therefore should be rejected as lead plaintiff.  This raises a matter that requires the Court's

25   attention.

26   In deciding whether to allow the aggregation of individual
      shareholders for appointment as lead plaintiff, courts have
27   [typically] considered the following factors: "(1) the existence of a
      pre-litigation relationship between group members; (2) involvement
28   of the group members in the litigation thus far; (3) plans for

United States District Court
Northern District of California

cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa."

*Brady*, 324 F. Supp. 3d at 345.  In the case at bar, after conserving multiple rounds of briefing, the Court concludes these factors largely weigh against appointment of the Huang Group.

As to the first factor, the members of the Huang Group claim that they have a pre-litigation relationship.  According to the members, "shortly after Leo Ou Chen announced his initial plan to acquire Jumei," they first met one another (and other Jumei stockholders) through Xueqiu.com, "a website that contains information and posts message boards regarding stock and other investments.  We discussed the transaction and believed that it did not provide adequate value to Jumei shareholders."  Huang Xianrong Supp. Decl. ¶ 6.[2]  However, even crediting Huang Group declarations, this is a minimal pre-litigation relationship at best.  There is no indication from the declarations that the members engaged with one another in any significant way.  There is no indication that they, on their own initiative, assembled themselves into a group prior to interaction with counsel.

On the fifth factor, the evidence of record does not suggest that the Huang Group members chose BES, in any meaningful way, to represent them.  Rather, each member simply states in a declaration that, "[a]fter the transaction was announced, I independently contacted [BES] in response to a press release" (implicitly, from BES).  Huang Xianrong Supp. Decl. ¶ 7.  This amounts to a client solicitation from counsel.[3]

On the second factor, the evidence of record does not support more than minimal

_____

[2] The Court cites the Huang Xianrong supplemental declaration as a representative declaration. The supplemental declarations from the other members of the Huang Group contain the same statement.

[3] The Huang Group members do not identify what press release they responded to.  But even assuming it was the class notice required by the PSLRA, that was still a client solicitation.  *See* Holleman Decl., Ex. 2 (press release) ("If you are interested [in] serving as lead plaintiff please contact [BES].").

The Court acknowledges Altimeo's contention that the Huang Group members may have responded to client solicitations (or recruitment notices) posted on Xueqiu.com – and that these solicitations contained misleading information.  *See* Docket No. 40 (Br. at 2, 4-5).  For purposes of the pending motions, the Court need not address this contention.  *See* also Docket No. 41 (Br. at 2) (BES denying involvement in the postings on Xueqiu.com).  The fact that the Huang Group members purportedly responded to a BES press release still amounts to a client solicitation.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    involvement on the part of the Huang Group members.  The Huang Group members simply assert

2    in conclusory fashion that they have had "regular discussions" with one another regarding this

3    litigation.  Xianrong Supp. Decl. ¶ 7.

4          What is more telling to the Court is the lack of involvement of the Huang Group members

5    with respect to the pending motions.  In the initial round of briefing with the Court, where the

6    Huang Group filed three sets of briefs (one opening brief and one reply brief in support of its

7    motion for appointment and one opposition brief in opposition to Altimeo's motion), the Huang

8    Group members provided *no* information about themselves (*e.g.*, investment experience), their

9    relationships with one another, how they came to be formed as a group, and (perhaps most

10   significantly) how they would cooperate and manage the litigation given their status as a group.

11   The Court gave the Huang Group an opportunity to cure this deficiency, *see* Docket No. 30

12   (minutes), but the joint supplemental declaration was still deficient.  *See* Docket No. 37 (order).

13   The Court has now been provided with additional supplemental declarations but they are still

14   conclusory and problematic.  Furthermore, to even get to this point, the Court has had to pull teeth.

15   This does not reflect commitment to the litigation on the part of the Huang Group members.  It

16   also appears that the answers to the Court's question raised at the first hearing about the

17   organizational structure and decision-making structure of the group – which counsel at that

18   hearing could not answer – appears to have been devised only after inquiry and prodding by the

19   Court.

20         The Court therefore does not find the Huang Group to be an adequate lead plaintiff.  The

21   evidence of record reflects that it is not a client-driven group but rather a lawyer-driven one.[4]  In

22   so finding, the Court recognizes that two of the members each have a financial interest greater

23   than that of Altimeo.  But notably, neither asked as part of the original briefing to be considered as

24   an individual lead plaintiff.  (They only belatedly offered when asked by the Court.)  That

25   arguably speaks to the individuals' lack of commitment to the litigation, including their intent to

26

27   ─────────────────────

28   [4] The Court emphasizes that it is finding here that the Huang Group has not established a
     presumptive case for appointment under the PSLRA.  Therefore, the Court need not address
     whether there is evidence to rebut that presumption.

United States District Court
Northern District of California

1   monitor the litigation.  None at the outset took the initiative to step forward as a lead plaintiff.

2   Moreover, Altimeo makes a fair point that it is post-hoc luck that any single member has a greater

3   financial interest.

4      This leaves Altimeo as the next candidate for consideration.  Here, the Court notes that

5   Altimeo's financial interest is not insignificant.  In addition, the adequacy of Altimeo as a lead

6   plaintiff is supported by the fact that it is an institutional investor.  *See In re Network Assocs. Sec.*

7   *Litig.*, 76 F. Supp. 2d 1107, 1023 (N.D. Cal. 1999) (noting that institutional investors have

8   expertise in the securities market as well as real financial interests in the integrity of the market,

9   and therefore "'would control the litigation, not lawyers'"); *see also Bally*, 2005 U.S. Dist. LEXIS

10  6243, at *9 (noting that "'[t]he PSLRA was enacted with the explicit hope that institutional

11  investors, who tend to have by far the largest financial stakes in securities litigation, would step

12  forward to represent the class and exercise effective management and supervision of the class

13  lawyers'").  It has also served as a lead plaintiff in other securities actions.  *See, e.g.*, *Maso Cap.*

14  *Inv. Ltd. v. E-House (China) Holdings Ltd.*, No. C-20-2943-ER (S.D.N.Y.) (Docket No. 47)

15  (order); *Altimeo Asset Mgmt. v. Wuxi Pharmatech (Cayman) Inc.*, No. C-19-1654-AJN (S.D.N.Y.)

16  (Docket No. 12) (order).

17     The Court previously expressed concerns about adequacy with respect to Altimeo.

18  However, its concerns had more to do with counsel selected by Altimeo rather than Altimeo itself

19  arising out of the incomplete briefing analyzing the parties' respective financial interests in the

20  first round of briefing.  Selection of counsel is a matter separate from appointment of a lead

21  plaintiff.  *See generally In re Cohen v. U.S. Dist. Ct.*, 586 F.3d 708, 709 (9th Cir. 2009).  As to

22  whether the Court approves Altimeo's selection of Pomerantz, the Court does so.  As an

23  institutional investor, Altimeo has an interest in fully vetting counsel.  Furthermore, the Pomerantz

24  firm and its lawyers are qualified and have experience in securities matters.  Although the

25  Pomerantz firm continued to dispute the Huang Group's financial interest during briefing, counsel

26  did, at oral argument, immediately concede the group's greater financial interest and focused

27

28

instead on its adequacy as an artificial group.[5]  Taking into account the totality of circumstances, the Court approves Pomerantz.  *See id.* at 712 ("hold[ing] that if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").

Accordingly, the Huang Group's motion for appointment is **DENIED** (Docket No. 12), and Altimeo's motion for appointment and selection of counsel is **GRANTED** (Docket No. 17).

This order disposes of Docket Nos. 12 and 17.


**IT IS SO ORDERED**.


Dated: September 4, 2020

_____
EDWARD M. CHEN
United States District Judge

---

[5] The Court expects more thorough briefing from the Pomerantz firm in the future.