# EXHIBIT A

***Haideri v. Jumei International Holding Limited, et al.*,**
**Case No.: 3:20-cv-02751-EMC (N.D. Cal.)**

Chart Regarding Alleged False and Misleading Statements
Pursuant to Civil Standing Order Paragraph 10

| Statement # | Complaint ¶ | Speaker, Date, Occasion | False/Misleading Statement or Omissions[1] | Reason Why False/Misleading When Made<br><br>(*See* Complaint Section VI) | Facts Giving Rise to Strong Inference of Scienter<br><br>(*See* Complaint Section VIII)[2] |
|---|---|---|---|---|---|
| 1 | 208 | Jumei, Shao, and Zhao;<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | "The Special Committee reviewed the terms and conditions of the Offer and the Merger with the assistance of its legal and financial advisors and unanimously (a) determined that the Merger Agreement and the transactions contemplated thereby, including the Offer and the Merger, are ***fair to, and in the best interests of" Jumei's shareholders***; (b) recommended that the Unaffiliated Security Holders accept the Offer and tender their Class A Ordinary Shares and/or ADSs to Purchaser pursuant to the Offer; and (c) recommended that the Board" | The inputs into Houlihan's fairness opinion and analysis were false and misleading. This, in turn, made the opinion that the offer price of $2 per share (or $20 per ADS) was fair, and in the best interests of shareholders, false and misleading. | All of Defendants' false and misleading statements relate to 1 - the valuation of Jumei in the Buyout; 2 – the plans or negotiations related to Jiedian that Jumei was engaged in during the Buyout; or 3 – the existence of appraisal rights for shareholders who dissented on the issue of whether the merger price reflected the fair value of their Jumei common stock.<br><br>The facts giving rise to a strong inference of scienter |

[1] Emphases added.
[2] Relevant Only to Claim for Violations of Section 10(b) of the Exchange Act.

| | | | | | |
|---|---|---|---|---|---|
| | | | determine that the Merger is fair and recommend it to shareholders. | | for all of Defendants' false and misleading statements include:<br><br>1. Chen's Shao's, and Zhao's financial motive<br><br>2. The information that Jumei's management provided to Houlihan is central to the valuation of Jumei in the Buyout. Chen is synonymous with Jumei's management because, as Jumei's CEO, acting CFO, and founder, he controlled and directed the management of the Company. Chen was the only executive officer identified other than a "Senior Vice President" whose role the Company did not describe any further. Indeed, Houlihan based its analysis on "***a certificate addressed to us from senior management of the Company*** which contains, among other things, representations regarding the accuracy of the information, data and other |
| 2 | 209 | Jumei, Shao, and Zhao;<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | The Special Committee "***expressly adopted" Houlihan Lokey's fairness opinion and analysis*** "in reaching its determination as to the ***fairness of the transactions*** contemplated by the Merger Agreement, including the Offer and the Merger." | Same as ¶ 208 | |
| 3 | 210 | Jumei, Shao, and Zhao;<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | The Special Committee determined that Houlihan's role as its financial adviser supported the procedural fairness of the Buyout. | Same as ¶ 208 | |
| 4 | 211 | All Defendants | The ***Board based its fairness determination and recommendation on "the Special*** | Same as ¶ 208 | |

| | | | | | |
|---|---|---|---|---|---|
| | | Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | ***Committee's unanimous determination, which the Board adopted, that it was fair to, and in the best interests of, the Company and the Unaffiliated Security Holders*** that the Company enter into the Merger Agreement, the Plan of Merger and consummate the transactions contemplated thereby, including the Offer and the Merger, on the terms and subject to the conditions set forth in the Merger Agreement, and the Special Committee's unanimous recommendation that the Board approve and adopt the Merger Agreement on the terms and subject to the conditions set forth in the Merger Agreement." | | materials (financial or otherwise) provided to, or discussed with, us by or on behalf of the Company."<br><br>3.  A confidential witnesses who described that Jumei was in negotiations with Laidian for the sale of Jiedian while the Buyout was pending.<br><br>4.  Confidential witnesses who described that Jumei's e-commerce and Shuabao businesses were not being wound down at the time of the Buyout. |
| 5 | 211 n.30 | All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | Jumei's "Board, acting upon the unanimous recommendation of the Special Committee, has (a) determined that the Merger Agreement and the transactions contemplated thereby, including the Offer and the Merger, are ***fair to, and in the best interests of, the Company and the Unaffiliated Security Holders***; (b) approved and adopted the Merger Agreement and declared it advisable for the Company to enter into the Merger Agreement . . . ; | Same as ¶ 208 | 5.  The descriptions of Jiedian's CEO (Wan Li) concerning Jiedian's status as the market leader in the power bank industry with further room for growth and the availability of financing. Defendants either knew of this information from the CEO of Jumei's most valuable asset or were reckless in failing to consult him. Chen also knew this information about Jiedian |

| | | | | | |
|---|---|---|---|---|---|
| | | | and (d) recommended that the Unaffiliated Security Holders accept the Offer and tender their Class A Ordinary Shares and/or ADSs to" Chen and his affiliated entities. | | because he was Jiedian's Chairman.<br><br>6. Chen admitted in his Offer to Purchase that he did not actually plan to wind down Jumei's e-commerce and Shuabao businesses. |
| 6 | 212 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | Chen and his affiliated entities stated in their Offer to Purchase (which the Recommendation Statement incorporated by reference) that "[t]he Offeror Group believes that the ***Offer Price to be received by Jumei's Unaffiliated Security Holders is fair to such Unaffiliated Security Holders***" based on "[t]he recommendations to Jumei's Unaffiliated Security Holders by, and the findings of, the Special Committee and the Jumei Board with respect to the fairness of the Offer and the Merger, as described in the Schedule 14D-9 [Recommendation Statement] to be filed by Jumei with the SEC." | Same as ¶ 208 | 7. Defendants Shao and Zhao knew or had access to the information showing the falsity of the assumptions that Jumei's management provided to Houlihan, based on their positions on the Special Committee and Jumei's Board. Shao's and Zhao's positions on the Special Committee (which Shao chaired) makes them particularly knowledgeable of, or reckless as to, the falsity of their statements |
| 7 | 213 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement; | The Offer to Purchase also stated that Chen and his affiliated entities believed that the Buyout was "***procedurally fair***" based on "[t]he ***factors considered by, and the findings of, the Special Committee and the Jumei Board*** with respect to the procedural | Same as ¶ 208 | because the Special Committee was given unfettered access to Jumei's management and business information in their task of assessing the fairness of Chen's offer, including to take any actions that the |

| | | | | | |
|---|---|---|---|---|---|
| | | Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | fairness of the Offer and the Merger"; the ***Special Committee's unanimous determination "that the transactions contemplated by the Offer and the Merger Agreement are advisable and fair to and in the best interests of the Unaffiliated Security Holders***"; the Jumei Board's recommendation, based upon the unanimous recommendation of the Special Committee, that Jumei's shareholders tender their Class A Ordinary Shares and/or ADSs pursuant to Chen's Offer; "[t]he ***fact that the Special Committee received an opinion from its financial advisor [Houlihan Lokey], dated February 25, 2020, as to the fairness, from a financial point of view and as of the date of the opinion, of the Offer Price*** of $2.00 per Class A Ordinary Share and $20.00 per ADS"; and the fact that "[t]he Special Committee had access to all of the information prepared or otherwise developed by Jumei's management including Jumei's financial projections." | | Committee deemed "necessary or appropriate" to investigate the fairness of the Buyout. Defendants Shao and Zhao therefore knew of the falsity of the information that Jumei provided to Houlihan as a basis for its valuation of the Company based on their access to this information, or recklessly disregarded its falsity. Shao and Zhao did not even take the basic step of conducting a market check to assess the fairness of Chen's offer. The Complaint describes specific meetings at which the Special Committee discussed Houlihan's financial analysis.<br><br>8. Defendants knew or recklessly disregarded that their statements as to the purported non-existence of appraisal rights under Cayman Island law with respect to short-form mergers reflected at best their own opinions, did not constitute a definitive |
| 8 | 215 | All Defendants | Jumei's financial projections for Jiedian from 2020 through 2024, which assumed that Jiedian's | The poor financial projections for Jiedian from 2020 through 2024 were based on the false | |

| | | | | | |
|---|---|---|---|---|---|
| | | Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | revenue would grow just 0.2% in 2021 and would be negative from 2022 through 2024, resulting in a compound annual growth rate for 2019 through 2024 of just 1.7%. | assumption that Jumei was unable to "raise sufficient financing to support Jiedian's" operations and growth.<br><br>This is patently false based on the abundant financing that was available to Jiedian's main competitors at this time, and Jiedian's role as the industry leader. Jiedian's CEO admitted both of these points, which are confirmed by many industry sources.<br><br>Moreover, Jumei was engaged in negotiations to sell Jiedian to Laidain.<br><br>This statement is also false because Jiedian did not actually need additional financing to support its growth, as Jiedian's CEO also admitted internally.<br><br>In addition, Defendants omitted Jumei's true projections or assessment of how Jiedian was expected to perform absent the false and | holding by any Cayman Island court or express statement under any Cayman Island statute or rule, failed to acknowledge that this was a disputed issue, and otherwise failed to provide a statement of rights beyond appraisal afforded to dissenting shareholders under Cayman Island Law as required by Item 1004(d) of Regulation M-A. The decision by the Grand Court of the Cayman Islands in *Changyou*, ruling that despite an ambiguity in its subsections, Section 238 of the Companies Law of the Cayman Islands does, in fact, provide short-form merger shareholders with appraisal rights, and detailing an evidentiary foundation for that holding, shows that Defendants had no basis to assert without qualification that Cayman Law provided the opposite. Defendants knew or recklessly disregarded the |

<table>
<tr><td></td><td></td><td></td><td></td><td>misleading financing assumption.<br><br>(*See* Complaint Sections IV.D.3.a-b)</td><td rowspan="4">fact that said ambiguity entitled them to, at best, advise minority shareholders of Jumei that they had a particular view as to what the statute provided but that it was not conclusive and that appraisal rights were, in fact, possibly available in the merger transaction. Defendants also knew or recklessly disregarded that they otherwise failed to fully comply with their obligations under Item 1004(d) of Regulation M-A by simply stating that appraisal rights were not available but then omitting a listing of "any other rights that may be available to security holders under the law".<br><br>9. Jumei has the scienter of its agents and management-level employees.<br><br>10. The Buyout, and the assumptions that Jumei's</td></tr>
<tr><td>9</td><td>216</td><td>All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020</td><td>These poor financial projections described in Paragraph 215 were based on the assumption from Jumei's management that "the Company is unable to adequately finance the operations of its businesses resulting in limited expected growth at Jiedian."</td><td>Same as ¶ 215</td></tr>
<tr><td>10</td><td>217</td><td>All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020</td><td>Houlihan stated in its presentation to the Special Committee that Jumei's management told Houlihan that these "[p]rojections do not assume the Company can raise sufficient financing to support Jiedian's required capital expenditures, increased revenue sharing costs and sales & marketing expenses, that are necessary to compete with other major players in the industry."</td><td>Same as ¶ 215</td></tr>
<tr><td>11</td><td>218</td><td>All Defendants</td><td>Houlihan's valuation of Jiedian was further depressed by the</td><td>Same as ¶ 215.</td></tr>
</table>

<table>
<tr>
<td></td>
<td></td>
<td>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020</td>
<td>exceedingly low multiple ranges that it applied to the business based on Houlihan's selection of supposedly comparable companies from different industries that were not informative of Jiedian's leading role atop the growing power bank industry in China, as well as the negative growth contained in management's financial projections.</td>
<td>In addition, the companies that Houlihan selected improperly compared Jiedian to companies from different industries and geographies that were not actually comparable, when Jiedian had direct peers in the fast-growing shared power bank industry in China where Jiedian was the market leader.<br><br>(See Complaint Section IV.D.3.c)</td>
<td rowspan="2">management provided as the basis for valuing the Company in the Buyout, were matters of such core importance to Jumei that Defendants' knowledge of this information can be presumed. While it is not plausible for Chen to have been absent from, and unaware of, this process, the scienter of any other Jumei employees that were involved in this process can be imputed to the Company by virtue of their role acting on behalf of the Company in the course of providing key information in connection with the Buyout.</td>
</tr>
<tr>
<td>12</td>
<td>219</td>
<td>All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020</td>
<td>Houlihan's "liquidation analysis" of Jumei's businesses other than Jiedian was based entirely on assumptions provided by Jumei's management, including their statement that "due to the capital intensiveness of certain businesses of the Company, the inability of the Company to secure third party financing and the recent difficulties faced by the E-Commerce segment of the Company's businesses, among other factors, the Company expects to wind down its E-Commerce and Shuabao business by 2021 and 2022."</td>
<td>Jumei's management was not actually planning to wind these businesses down.<br><br>This valuation also did not account for the true value of these businesses even within the context of a liquidation analysis.<br><br>In addition, Defendants omitted Jumei's projections or assessment of how these businesses were expected to perform absent the false and misleading wind-down assumption, as well as the full financial results for how these businesses performed in 2019.</td>
</tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| | | | | (*See* Complaint Section IV.D.4) | |
| 13 | 220 | All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | Houlihan relied on Jumei's management not only for the assumption that these businesses other than Jiedian would be wound down, but also for the specific financial metrics contained in its liquidation analysis for these businesses. | Same as ¶ 219 | |
| 14 | 228 | All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | "[T]he Company is ***not currently undertaking or engaged in any negotiations*** in response to the Offer that relate to, or would result in, (a) a tender offer for or other acquisition of the Company's securities by the Company, any subsidiary of the Company or any other person, (b) any extraordinary transaction, such as a merger, reorganization or liquidation, involving the Company or any subsidiary of the Company, (c) any purchase, sale or transfer of a material amount of assets of the Company or any subsidiary of the Company, or (d) any material | Jumei was conducting negotiations with Laidian for the acquisition of Jiedian at the time of the Buyout.<br><br>(See Complaint Section IV.D.3.a.i) | |

| | | | | | |
|---|---|---|---|---|---|
| | | | change in any present dividend rate or policy, indebtedness or capitalization of the Company." | | |
| 15 | 229 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | Chen stated in his Offer to Purchase (which was incorporated by reference into the Recommendation Statement and Rule 13e-3 Transaction Statements) that "[e]xcept as otherwise described in this Offer to Purchase, ***Parent and Purchaser have no current plans or proposals or negotiations that relate to or would result*** in (i) an extraordinary corporate transaction, such as a merger (other than the Merger), reorganization or liquidation involving Jumei or any of its subsidiaries; (ii) any purchase, sale or transfer of a material amount of assets of Jumei or any of its subsidiaries; (iii) any material change in Jumei's present dividend rate or policy or the indebtedness or capitalization of Jumei; or (iv) any other material change in Jumei's corporate structure or business." | Same as ¶ 228 | |
| 16 | 234 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 | **Are appraisal rights available in either the Offer or any subsequent merger?** | Statements contradict Section 238 of Cayman Islands Companies Law. | |

| | | | | | |
|---|---|---|---|---|---|
| | | Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | Appraisal rights are not available in connection with the [Tender] [o]ffer.<br><br>For the subsequent Merger, Purchaser expects to merge with and into the Company through a "short-form" merger in accordance with Part XVI and in particular section 233(7) of the Companies Law with the Company continuing as the Surviving Company. Under section 233(7) of the Companies Law, because the Merger is a "short-form" merger, the vote of the holders Class A Ordinary Shares and the holders of ADSs is not required to effect the Merger if a copy of the Plan of Merger is given to every registered shareholder of the Company. Section 238 of the Companies Law attached as Schedule C hereto provides a procedure for exercising dissenters' right in the case of a "long-form" merger. However, **because the Merger is a "short-form" merger, the terms of Section 238 of the Companies Law do not apply to the holders of the Class A Shares and ADSs in connection with the Merger.** A copy of the Plan of Merger will be | Defendants stated their position as an unqualified conclusion, as if it were the undisputed law in the Cayman Islands, while failing to adequately disclose the likely or potential possibility that shareholders *do* have appraisal rights, and failing to describe the basis for Defendants' position.<br><br>Statements fail to meet the disclosure obligations imposed by Rule 13e-3(f) (17 C.F.R. § 240.13e–3(f)) and Item 1004(d) of Regulation M-A.<br><br>(See Complaint Section VI.3.b) | |

| | | | | | |
|---|---|---|---|---|---|
| | | | given each registered holder of the Class A Ordinary Shares pursuant to section 233(7) of the Companies Law. See "Special Factors — Section 6. Appraisal Rights; Rule 13e-3." | | |
| 17 | 235 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | If the Offer is completed, Purchaser will cause a second-step "short-form" Merger of Purchaser and the remaining shareholders other than Offeror Group and Purchaser would, without the need for further action by such shareholders, receive the same price per share as was paid in the Offer, without interest and less any ADS cancellation fees and other related fees and withholding taxes. In the Merger, each then issued and outstanding Ordinary Share (other than Ordinary Shares held by Offeror Group) will be cancelled and converted into and represent the right to receive, as merger consideration, the Offer Price. **In the Merger, the Unaffiliated Security Holders will not have appraisal rights.** | Same as ¶ 234 | |
| 18 | 236 | Jumei, Chen | **Position of the Offeror Group Regarding Fairness of the Offer and the Merger** | Same as ¶ 234 | |

| | | | | | |
|---|---|---|---|---|---|
| | | Offer to Purchase and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | [T]he Offeror Group considered negative in its considerations concerning the fairness of the terms of the transaction [including:]<br><br>Because the Merger is being effected pursuant to a "short-form" merger under section 233(7) of Companies Law, the Merger does not require a shareholder vote or approval by special resolution by the Company's shareholders if a copy of the Plan of Merger is given to every shareholder of the Company. The Unaffiliated Security Holders will not therefore have the opportunity to vote on the Merger. **Further, the Unaffiliated Security Holders will not be entitled to the dissenters' rights available in a "long-form" merger as contemplated under section 238 of the Companies Law.** | | |
| 19 | 237 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement; | **Effects of the Offer**<br><br>If the Offer is completed, in accordance with the terms of the Merger Agreement, Purchaser will cause the second-step merger of Purchaser and Jumei in which all | Same as ¶ 234 | |

| | | | | | |
|---|---|---|---|---|---|
| | | Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | remaining Unaffiliated Security Holders would, without the need for further action by such shareholder, receive the same price per share as was paid in the Offer, without interest, and less $0.05 per ADS cancellation fees, $0.02 per ADS depositary service fees and other related fees and withholding taxes and other fees and expenses. In the Merger, each then issued and outstanding Class A Ordinary Share owned by the Unaffiliated Security Holders, including Class A Ordinary Shares represented by ADSs, will be converted into and represent the right to receive the Offer Price. Because the Merger is being effected pursuant to a "short-form" merger under section 233(7) of the Companies Law, the Merger does not require the vote or approval by the Company's shareholders if a copy of the Plan of Merger is given to every registered shareholder of the Company. The Unaffiliated Security Holders will therefore not have the opportunity to vote on the Merger. **Further, the Unaffiliated Security Holders will not be entitled to the dissenters' rights available in a "long-form" merger as** | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | **contemplated by section 238 of the Companies Law.** See "Special Factors—Section 8. Appraisal Rights; Rule 13e-3." | | |
| 20 | 238 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | **Appraisal Rights; Rule 13e-3**<br><br>**Appraisal Rights**. As the Merger will be a "short-form" merger in accordance with Part XVI (and in particular section 233(7)) of the Companies Law with the Company continuing as surviving company, the vote of the shareholders of Jumei is not required to effect the Merger. A copy of Section 238 of the Companies Law is attached to this Offer to Purchase as an Exhibit which provides a procedure for exercising dissenters' rights in the case of a "long-form" merger. However, **because the Merger will be a "short-form" merger, the terms of Section 238 of the Companies Law do not apply to the Unaffiliated Security Holders.** A copy of Section 238 of the Companies Law is attached to this Offer to Purchase as an Exhibit for the information of the Unaffiliated Security Holders. | Same as ¶ 234 | |

| | | | | | |
|---|---|---|---|---|---|
| | 239 | Jumei, Chen<br><br>Offer to Purchase and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | **Certain Legal Matters; Regulatory Requirements**<br><br>**Requirements for a Merger**. Following the consummation of the Offer, Purchaser will, pursuant to the Merger Agreement, consummate a merger with Jumei in which all outstanding Shares not owned by Parent and Purchaser will be cancelled and converted into the right to receive cash in an amount equal to the Offer Price, without interest, but subject to applicable $0.05 per ADS cancellation fees, $0.02 per ADS depositary service fees and related fees and withholding taxes. The Merger will be a "short-form" merger in accordance with Part XVI (and in particular section 233(7) of the Companies Law, which does not require the vote of the shareholders of the parties to the Merger. Section 238 of the Companies Law is attached to this Offer to Purchase as an exhibit and provides a procedure for exercising dissenters' rights in the case of a "long-form" merger. However, **as the Merger will be a "short-form" merger pursuant to section 233(7) of the Companies Law and no shareholder vote on** | Same as ¶ 234 | |

| | | | | | |
|---|---|---|---|---|---|
| | | | **the Merger will be held, holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be able to exercise dissenters' rights under section 238 of the Companies Law, which applies to mergers under the Companies Law in which a shareholder vote is held.** | | |
| 21 | 240 | All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | **Reasons for the Offer and the Merger; Recommendation of the Special Committee**<br><br>Countervailing factor<br><br>[B]ecause the Merger is being effected pursuant to a "short-form" merger under section 233(7) of **Companies** Law, the Merger does not require a shareholder vote or approval by special resolution by the Company's shareholders. The Unaffiliated Security Holders will not therefore have the opportunity to vote on the Merger. **Further, the Unaffiliated Security Holders will not be entitled to the dissenters' rights available in a "long-form" merger as contemplated under section 238 of the Companies Law.** | Same as ¶ 234 | |

| | | | | | |
|---|---|---|---|---|---|
| 22 | 241 | All Defendants<br><br>Recommendation Statement and Rule 13e-3 Transaction Statement;<br><br>Issued on February 26, 2020, and amended on March 20, 2020 and April 1, 2020 | **Appraisal Rights**<br><br>**Appraisal rights are not available in connection with the Offer.** Holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be entitled to a vote with respect to the Merger, as Purchaser will be holding at least 90% of the total voting **power** in the Company and the Merger will be a "short-form" merger in accordance with Part XVI (and in particular Section 233(7)) of the Companies Law, which does not require the vote of the shareholders of the parties to the Merger if a copy of the Plan of Merger is given to every registered shareholder of the Company. **As the Merger will be a "short-form" merger pursuant to Section 233(7) of the Companies Law and no shareholder vote on the Merger will be held, holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be able to exercise dissenters' rights under Section 238 of the Companies Law, which applies to** | Same as ¶ 234 | |

| | | | | | |
|---|---|---|---|---|---|
| | | | **mergers under the Companies Law in which a shareholder vote is held**. A copy of Section 238 of the Companies Law is set forth in Annex C hereto for the information of the Unaffiliated Security Holders. | | |